## FRANK HUMPHREY v. HANS H. SIEVERS.[1]

### July 6, 1917.

### Nos. 20,342—(159).

**Vendor and purchaser — deception by vendor — question for jury.**

1. Where, in an action for deceit brought by the purchaser of a farm, it appeared that nearly one-half of the land lay in a lake bed and in most years was covered with water, but, at the time it was examined by the purchaser, a large part of the portion within the lake bed was in crop and the remainder in pasture, and that the vendor, without making known the fact that the condition of the land at that time was not its usual or natural condition, represented the farm to be a good farm

[1]Reported in 163 N. W. 737.

and to have raised the best crops in that vicinity every year for the last 20 years, the question as to whether the purchaser had been deceived to his damage was for the jury.

**Same — ratification after discovery of false representations.**

2. One who is induced by false representations to enter into a contract, and who, after discovering the falsity of the representations, ratifies the contract while it still remains wholly executory, waives the fraud and cannot recover damages therefor.

**Same — affirmation after partial performance and discovery of fraud.**

3. If he has partly performed the contract before discovering the fraud, he may affirm it and bring his action for deceit; but an agreement, modifying the prior contract, made after discovery of the fraud, operates as a waiver of his right to bring such action.

**Same — modification of contract — question for jury.**

4. Plaintiff partly performed the original contract and subsequently made two contracts modifying it. Whether these modifications were made before he had knowledge of the deceit was, under the evidence, a question for the jury.

**Same — assignment of interest not a waiver.**

5. Plaintiff having affirmed the contract had the right to transfer his interest in the land, and did not waive his right of action for deceit by doing so.

**Same — measure of damages.**

6. The measure of damages was the difference between the purchase price and the market value of the land, and was not affected by the price for which plaintiff sold his interest in the land.

**Witness — value of land — cross-examination.**

7. Defendant having testified to the value of the land which he had owned less than two years, it was not an abuse of discretion to permit him to be asked on cross-examination what he had paid for it.

Action in the district court for Redwood county to recover $5,400 for false representations in the sale of a farm. The case was tried before Olsen, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict in favor of plaintiff for $1,300. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Frank Clague,* for appellant.

*John A. Dalzell* and *L. D. Barnard,* for respondent.

TAYLOR, C.

In the summer of 1915, plaintiff entered into a written contract with defendant for the purchase of a farm of 140 acres in Yellow Medicine county for the sum of $15,400, and paid the first instalment of the purchase price. In September, 1916, he brought this action to recover damages on the ground that he had been deceived as to the character of the farm by false representations made by defendant. The jury returned a verdict in his favor. Defendant made a motion for judgment notwithstanding the verdict, or for a new trial, and appealed from an order denying his motion.

The court withdrew from the jury all the alleged misrepresentations except the representation "that this was a good farm and had raised the best crops of any farm around there every year for the last twenty years." Defendant insists that this was only an expression of opinion and a permissible puffing of his property on the part of the owner, and that a claim for damages cannot be predicated thereon. It is conceded that over 66 acres, of the 140 acres contained in the farm, lie in the bed of a former meandered lake which had been divided among the adjoining landowners; that when plaintiff looked over the farm and made his contract, in 1915, a large part of this 66-acre tract was in crop and the remainder in pasture and that, in 1916, the lake filled up again and covered his entire tract with water. The evidence would justify the jury in finding that the 66-acre tract could not be used for farming purposes except at infrequent intervals when the season was extremely dry; that in ordinary seasons it was under water; and that plaintiff, who was a stranger in that locality, had no knowledge of these facts when he made his contract. Perhaps the representations in question would not give rise to a cause of action, if the farm had merely failed to rank among the recognized good farms, or to produce the best crops in that vicinity. However this may be, we think that the statement that the farm was a good farm and had produced good crops for 20 years, coupled with the further statement that the best crops were raised on the low ground, amounted to an affirmation that the land exhibited to plaintiff as under cultivation was, at least ordinarily, capable of being used for farming purposes, and does not square with the fact that in

most years nearly one-half of the land is too wet to be used for any farming purpose whatever. 12 R. C. L. 247, et seq. These representations having been made during an inspection of the land, in a season in which the greater part of the lake bed was capable of cultivation, without making known the fact that this lake bed was usually covered with water, made a question for the jury as to whether plaintiff had been deceived to his damage. Thomas v. Murphy, 87 Minn. 358, 91 N. W. 1097.

On November 19, 1915, plaintiff and defendant entered into a second written contract which extended the time for the payment of deferred instalments of the purchase price for the land; and on March 29, 1916, they entered into a third written contract, which again changed the time and manner in which such deferred instalments were to be paid. Defendant insists that plaintiff, by making these subsequent contracts, ratified and confirmed the prior contract, and thereby precluded himself from maintaining an action for the alleged fraud. One who is induced by false representations to enter into a contract, and who, after discovering the falsity of such representations, ratifies and confirms the contract while it still remains wholly executory, waives the fraud and cannot recover damages therefor. Thompson v. Libby, 36 Minn. 287, 31 N. W. 52; Bartleson v. Vanderhoff, 96 Minn. 184, 104 N. W. 820; Advance Realty Co. v. Nichols, 126 Minn. 267, 148 N. W. 65; McDonough v. Williams, 77 Ark. 261, 92 S. W. 783, 8 L.R.A.(N.S.) 452, 7 Ann. Cas. 276, and note.

But where he has performed the contract, in whole or in part, before discovering the falsity of the representations, he may affirm the contract and bring his action for damages for the deceit. Thompson v. Libby, 36 Minn. 287, 31 N. W. 52; Haven v. Neal, 43 Minn. 315, 45 N. W. 612; Stearns v. Kennedy, 94 Minn. 439, 103 N. W. 212; Ritko v. Grove, 102 Minn. 312, 113 N. W. 629.

The last rule is subject to the limitation, however, that the party deceived, after discovering the deceit, "must stand towards the other party at arm's length, must comply with the terms of the contract on his part, must not ask favors of the other party or offer to perform the contract on conditions which he has no right to exact, and must not make any new agreement or engagement respecting it. If he does

so he waives the fraud." 14 Am. & Eng. Enc. (2d ed.) 171; 20 Cyc. 92; Thweatt v. McLeod, 56 Ala. 375; Schmidt v. Mesmer, 116 Cal. 267, 48 Pac. 54; Elwood v. Tiemair, 91 Kan. 842, 139 Pac. 362; Brown v. South Joplin L. & Z. M. Co. 231 Mo. 166, 132 S. W. 693, 140 Am. St. 509.

Plaintiff had paid two instalments of the purchase price before making the subsequent contracts, and had the right to affirm the contract and bring his action for deceit, unless he had knowledge of the deceit at the time he made the subsequent contracts. His testimony is to the effect that he did not know the facts in respect to the usual condition of the land within the lake bed until after he had executed the last of these contracts. While it appears that the lake bed was covered with water at the time the last of these contracts was executed, it also appears that the snowfall had been unusually heavy that winter, that the snow was then melting but had not entirely disappeared, and that the ground was still frozen, so that the condition then existing did not necessarily indicate that such was the usual and natural condition. The evidence will not justify this court in saying that it conclusively appears that plaintiff knew or ought to have known the facts at that time. The question was for the jury, and their verdict was for plaintiff.

Defendant also insists that plaintiff is not entitled to recover because he has assigned the contract and his interest in the land to a third party who assumed the payment of the unpaid instalments of purchase price. The contract having been affirmed by plaintiff it remained in full force and effect, and plaintiff's interest in the land thereunder still continued; and whether he retained this interest himself, or sold it to another, did not affect his claim for damages against defendant. This claim was not assigned and could still be enforced. Teachout v. Van Hoesen, 76 Iowa, 113, 40 N. W. 96, 1 L.R.A. 664, 14 Am. St. 206; McKay v. McCarthy, 146 Iowa, 546, 123 N. W. 755, 34 L.R.A.(N.S.) 911. Defendant's rights do not appear to have been impaired by the assignment, for he was not entitled to have the contract rescinded, and he not only retains plaintiff's personal obligation to pay the deferred instalments, and still holds the title to the property as security therefor, but, as the purchaser assumed plaintiff's

obligations, he has probably acquired the right to look to the purchaser for the subsequent payments, if he so chooses.

The measure of plaintiff's damages was the difference between the purchase price and the market value of the land at the time of his purchase. Stickney v. Jordan, 47 Minn. 262, 49 N. W. 980; Mountain v. Day, 91 Minn. 249, 97 N. W. 883; Olson v. Northern Pacific Ry. Co. 126 Minn. 229, 148 N. W. 67, L.R.A.1915F, 962. Whether he made a good or bad bargain in disposing of his interest has no material bearing upon this question.

Defendant, while a witness in his own behalf, testified as to the value of the farm. It appeared that he had bought the farm a little less than two years before he sold it to plaintiff. On cross-examination, the court, against defendant's objection, permitted plaintiff to elicit what defendant paid for the farm. Defendant urges this ruling as error. The extent to which a party may be permitted to go in cross-examination rests largely in the discretion of the trial court, and we find no abuse of discretion in this ruling.

The order appealed from is affirmed.